**In the Matter of D. R. SELLERS, Bankrupt.**

**No. 66–H–58.**

United States District Court
S. D. Texas,
Houston Division.

April 11, 1968.

H. A. Phillips, Houston, Tex., Trustee.

O. Joseph Damiani, Houston, Tex., for bankrupt.

MEMORANDUM:

CONNALLY, Chief Judge.

This is a proceeding to review a ruling by the Referee in Bankruptcy denying petitioner a discharge. Upon the filing of specifications of objections to the discharge by the United States on behalf of the Small Business Administration, a full hearing was held on the matter, after which the Referee entered his decision denying discharge. Petitioner sought, and was granted a rehearing, whereupon the Referee reaffirmed the denial.

The government's objection to discharge was bottomed on the provisions of Section 32(c) (3) of Title 11 U.S.C., which reads as follows:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation; * * *."

In particular, it is alleged that the bankrupt obtained a loan from the First National Bank of Baytown, Texas, 50% of which was guaranteed by the S.B.A., by furnishing a false financial statement to the government agency. The proceeds of the loan were to be used in furtherance of the business of The Yum Yum Tree, a retail gift shop owned by the bankrupt and his wife.

Petitioner's original application to the S.B.A. for a $30,000 loan was accompanied by a financial statement dated December 1, 1964. This application was turned down by the agency because the statement indicated that Dr. Sellers was in a position to obtain the loan from regular commercial sources. In seeking to have the S.B.A. reconsider its decision, the bankrupt submitted a new financial statement, dated March 31, 1965. This latter statement differed substantially from the previous one in only one respect—a small mineral interest valued at $25,000 in the December 1964 state-

ment was assigned no value.[1] On the basis of the second application, the loan of $30,000 was approved.

The bone of the government's contention is found in the failure of Dr. Sellers to reveal in either of his financial statements the existence of two outstanding debts owed by him to Mrs. J. N. McLeod and Gulf Electric Company, respectively. The debt to Mrs. McLeod was evidenced by a promissory note dated June 4, 1958, in the original principal amount of $5,700. Suit was filed on the note in February of 1964, and, while the evidence reveals that an agreement was reached to settle the suit, at the time the second financial statement was submitted to the S.B.A. at least $4,000 was still unpaid under that agreement. Subsequently, on October 25, 1965, judgment was entered in the case against the petitioner for $9,510.36, plus attorney's fees.

The debt owed to Gulf Electric was also evidenced by a promissory note; this one, dated November 20, 1964, was for $1,647.71. Suit was filed on the note on January 14, 1965, and judgment was entered by default for $1,147.71 plus interest, costs and attorney's fees on April 13, 1965.

Petitioner contests neither the existence of the debts nor their omission from the financial statements. He argues, however, (1) that the Referee improperly placed the burden upon him to prove that he had not committed the acts charged in the government's specifications of objections, (2) that the S.B.A. did not rely on the statements in approving the loan, (3) that the financial statements were not materially false, and (4) that the Referee failed to make a finding on the question of intent to deceive. While nine separate assignments of error are set out in the petition for review, the substance of the bankrupt's position is essentially as set out above.

There can be little doubt that the Referee correctly placed the burden of proof on the bankrupt. The final proviso of Section 32(c) of Title 11 U. S.C. reads as follows:

"* * * That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

When the government, by its proof, showed the existence of debts owed by the bankrupt not listed on the financial statement submitted to the S.B.A., certainly the Referee had reasonable grounds for believing that the acts charged in the specification had been committed. Hence, at this stage, the burden of proof rested with the bankrupt.

In support of his theory of non-reliance by the S.B.A., bankrupt argues that having once been refused a loan because a too sound financial position was presented, inclusion of the two outstanding debts on the second application would have been of mere cumulative effect and would have enhanced his chances for securing the loan rather than diminished them. This bootstrap argument is unconvincing. It fails to recognize the importance to the S.B.A., in considering the application, of knowing not only the amount of the debts, but the nature thereof and the length of time they have been outstanding. Their refusal of a loan may justifiably be based upon a finding that the applicant lacks financial responsibility, as well as upon a determination that his financial condition is poor; and these two circumstances are not invariably concurrent.

1. While this devaluation appears to be entirely arbitrary, the government did not rely upon it in attempting to show the falsity of the statement; neither did the Referee consider it for that purpose.

 

By omitting the debts, petitioner denied the S.B.A. part of the information it needed, and to which it was entitled, to make these determinations accurately.

Petitioner also introduced evidence that the S.B.A. received information from a third party concerning his financial position. Raymond O. Johnson, a certified public accountant who had done work for the bankrupt, testified that he conversed with an official of the S.B.A. and suggested, in effect, that Dr. Sellers was a poor financial risk. The Referee found that this testimony was ineffective to show the absence of reliance and that if it had any probative value, it was in tending to prove the contrary.

 Thus, it appears that the evidence on the bankrupt's side of the slate is woefully weak on the question of reliance; and, in view of the direct testimony of Mr. Perrine of the S.B.A. that it was doubtful the loan would have been approved had the two debts been included in the statement, I am unable to say that the Referee's finding of reliance was clearly erroneous.

That the omitted debts made the financial statement materially false can hardly be disputed in light of the nature and amounts thereof. Certainly, the petitioner, who had the burden, produced no convincing evidence on this point. The Referee's finding of materiality is not clearly erroneous.

Finally, bankrupt contends that the Referee made no finding on the question of intent to deceive. I disagree. The Referee held the burden of proof to be upon the bankrupt and found that he had not met his burden. In so finding, the only two offers of proof from the bankrupt tending to show an absence of the requisite intent was held to be unavailing.

In this regard petitioner explained that he omitted the debt to Mrs. McLeod because she was his mother-in-law and because he considered it a personal matter of no concern to the S.B.A. As for the debt to Gulf Electric, he testified to having no knowledge of the filing of

suit on the note or the entry of judgment thereon. He admitted, however, to having knowledge of the existence of the debt upon which suit was instituted.

 I agree with the Referee that this evidence was insufficient to establish the absence of an intent to deceive. It does little to explain away the natural inference to be drawn from the bankrupt's conduct in furnishing to the S.B.A. a statement purporting to reflect all his business and personal liabilities, but which, in fact, omitted two material outstanding debts.

The findings of the Referee are adopted as set forth above; and discharge in bankruptcy is denied in accordance therewith.

The clerk is directed to file this Memorandum and to furnish copies hereof to counsel of record.