**In re CONTRACT MARINE CARRIERS, INC., Debtor.**

**Bankruptcy No. 86–00196–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 30, 1988.

Ruth A. Gibson, Williamsburg, Va., for debtor.

Robert E. Hyman, Richmond, Va., Trustee.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

### FINDINGS OF FACT

This matter comes before the Court on the application of Ruth A. Gibson ("Gibson") for compensation in the amount of $1,623.50 in attorney fees and $165.58 in expenses to be paid as an administrative expense of the Chapter 7 bankruptcy of Contract Marine Carriers, Inc. The applicant was employed by a creditor of the estate, Sharon C. Early ("Early"), who allegedly, by virtue of her employment by the debtor, had knowledge that three claims filed in the case were objectionable. Early, through her attorney, Gibson, filed objections to the three claims of John Ricci, Glenda Lewis, and Pamela Gilliard. As a result of the objections filed, it is asserted that Pamela Gilliard and Glenda Lewis both amended their claims, thereby saving the estate $2,250.00 and $988.18 respectively, and that the Court disallowed $14,345 of John Ricci's $16,000 claim. Accordingly, the applicant asserts that as a result of her efforts she substantially benefited the estate in the amount of $17,583.18 and, therefore, requests compensation from the estate.

### CONCLUSIONS OF LAW

The applicant in requesting compensation from the estate asserts "that the Bankruptcy Court, in the exercise of its equity powers, has discretion to allow reasonable fees to persons claiming to have rendered services in bankruptcy cases." In furtherance of this argument Gibson cites *Fine v. Weinberg*, 384 F.2d 471, 473–74 (4th Cir. 1967). The facts of *Fine*, however, are markedly distinguishable from the facts and circumstances presently before the Court and, therefore, cannot be relied on here.

In *Fine*, Andrew S. Fine ("Fine") was named trustee in a deed of assignment for the benefit of creditors. As trustee, Fine retained legal services to assist him with the sale of the assets of the estate. One day prior to the sale of the estate's assets, several creditors filed an involuntary bankruptcy petition against the estate. Subject to the court's approval, which occurred later, the sale was carried out and the trustee and his attorney sought compensation from the estate. The bankruptcy court reduced the amount of the trustee's compensation from what was provided for in the deed of assignment and refused to approve the compensation of the trustee's attorney. On appeal, the Circuit Court held that both applicants were entitled to a "reasonable fee" paid out of the estate for their services and that the bankruptcy court's equitable powers authorized it to make such payments.

In the matter currently before the court, the services provided by Gibson did not arise in the same manner or benefit the estate in the same way as the services that were provided in *Fine*. In *Fine*, the fees of the trustee and his counsel were paid by the estate as the result of services performed in the liquidation of assets of the estate, the proceeds of which were turned over to the bankruptcy trustee. Also, the trustee and his counsel did not need to seek court approval for employment and the right to compensation in *Fine* since the right to compensation arose by the deed of assignment. The court's intervention in the case occurred only because the liquidation was conducted after the institution of the bankruptcy proceeding. In contrast with *Fine*, the services provided by Gibson were not performed pursuant to a pre-existing agreement and Gibson's activities did not have the effect of increasing the value of the estate. In addition, the situation presented in *Fine* has been remedied by 11 U.S.C. § 503(b)(3)(E) of the Bankruptcy Code by allowing for the compensation of "custodians" for their work performed on behalf of the bankruptcy estate. Therefore, the situation presented in *Fine* is distinguishable from the facts of this matter and the applicant should not be allowed compensation as a result of the alleged benefit she provided to the estate. *See In*

*re Spencer,* 35 B.R. 280, 281–82 (Bankr.N.D.Ga.1983).

The applicant also asserts that the six grounds that § 503(b) state for allowing administrative compensation are not meant to be exclusive since the grounds are predicated by the words "there shall be allowed administrative expenses ... including...." Though the applicant's interpretation may be valid, this Court need not address this issue since it cannot be found that the services performed by Gibson would warrant relief outside the statute. *See Lazar v. Casale, (In re Casale)* 27 B.R. 69, 70 (Bankr.E.D.N.Y.1983). The services performed by Gibson were duplicative of the duties of the trustee and this Court has an interest in ensuring that the estate does not pay for a duplicity of services. The actions of Gibson can also be considered as being self-serving and do not actually increase the size of the estate. In addition, no reason was given for Gibson's failure to seek court employment prior to the work she performed. Therefore, Gibson's application for compensation as an administrative expense cannot be allowed.

■ In the alternative, the applicant requests that, although her claim does not fall within the statute, the Court should exercise its equitable powers and approve, *nunc pro tunc,* an application for her appointment as attorney to the trustee for purposes of objecting to the claims in question. It is apparent, however, that the applicant did not rely on being compensated by the estate at the time she brought her objections since she did not request authorization from the Court for an administrative allowance at that time. It is a well established precedent that within the context of a bankruptcy proceeding, "professionals seeking administrative allowance are charged with the knowledge of the 'prior authorization' rule." *In re Casale,* 27 B.R. at 70. Ignorance or unexplained noncompliance with this rule without a legitimate reason is not sufficient to allow *nunc pro tunc* relief since *nunc pro tunc* relief can only be granted in exceptional circumstances. *Fanelli v. Hensley, (In re Triangle Chemicals, Inc.),* 697 F.2d 1280

(5th Cir.1983). The reasons previously discussed reflect that exceptional circumstances do not exist in this instance. Therefore, this Court cannot approve *nunc pro tunc* relief in this matter.

Accordingly, for the reasons stated above, judgment must be entered denying the applicant's request for compensation.

An appropriate Order will issue.